FILED
2012 Aug-30  PM 03:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
KENT DUKE and JACQUELINE C.      }
DUKE,                            }
                                 }
       Plaintiffs,               }    CIVIL ACTION NO.
                                 }    2:12-cv-00157-AR
v.                               }
                                 }
NATIONSTAR MORTGAGE, L.L.C.,     }
                                 }
       Defendant.                }
```

## MEMORANDUM OPINION AND ORDER

This case illustrates the shortcomings, even the dangers, of the once mighty global secondary mortgage loan market, with its arcane methods of doing business, conceived by ambitious, super-sophisticated, big-brained, short-sighted financiers and their lawyers, who did not realize that they were creating a Frankenstein for everybody involved except the lawyers. Based on the number of somewhat similar cases pending in various federal and state courts, the roof has come crashing down, and its restoration remains in doubt. Because of the complexities of the system and of the overall facts of this case, the court will do its best to limit itself to the single issue before it.

When this case began, there were two named defendants, MorEquity, Inc. ("MorEquity") and Nationstar Mortgage, LLC ("Nationstar"). The action as against MorEquity was dismissed with prejudice on March 15, 2012, leaving Nationstar as the only defendant. For some unexplained reason, the parties are still

filing papers that include MorEquity as a defendant.  To resolve any doubt, the order of March 15, 2012, is hereby AMENDED pursuant to Rule 54(b) to direct the entry of final judgment in favor of MorEquity and against plaintiffs, Kent Duke and spouse, Jacqueline C. Duke ("the Dukes", "Mrs. Duke" or "Mr. Duke", as appropriate), the court expressly determining that there was on March 15, 2012, and still is, no reason for delay.

Before the court is a narrowly focused motion for summary judgment (Doc. 22) by Nationstar, claiming that the Dukes' claims are barred by the doctrine of *res judicata*.  Also pending is the Dukes' motion to strike (Doc. 26) the declaration of A.J. Loll and its attachments ("Loll Declaration"), submitted by Nationstar in support of its Rule 56 motion.  There is no pending challenge to the Dukes' action on any basis except *res judicata*.  Therefore, the court need not consider of any evidence except that relevant to the defense of *res judicata*.  For the reasons that follow, the Dukes' motion to strike and Nationstar's motion for summary judgment will both be denied.

## BACKGROUND[1]

On April 27, 2004, Mrs. Duke borrowed $293,600.00 from something calling itself "Wilmington Finance, a division of AIG Federal Savings Bank" ("Wilmington Finance").  She signed a

---

[1] Because of the procedural posture, all facts are viewed in the light most favorable to the Dukes.

promissory note payable to Wilmington Finance, securing the said sum with a mortgage on her home.  The record does not contain a copy of the note.  Mr. Duke, as spouse, executed the mortgage with Mrs. Duke in favor of Wilmington Finance.  It is unknown whether Wilmington Finance was at that time a juridical entity (something it **would have been** if it was a corporate subsidiary of AIG, or which it **would not have been** under Alabama land law if it was, in fact, "AIG, d/b/a Wilmington Finance").  The answer to this enigma does not appear from the record.  The loan transaction began with this potential problem, which, fortunately, has been resolved, inasmuch as the parties do not complain about the status of the original lender-mortgagee.  The court will therefore, assume, with the parties, that Wilmington Finance was a legal entity, and was the actual lender-mortgagee.

Wilmington Finance assigned its note and mortgage on or about April 29, 2004, to MorEquity, Inc. ("MorEquity").

In the complicated world of the high risk mortgage industry as it existed at all times here pertinent, the answer to a question as simple as "who is the owner of a mortgage?" is not always apparent from a review of the land records where the real property is located.  In fact, the term "owner" may mean "a hundred owners" involved in a joint or divided undertaking or investment where the original homeowner-borrower is unaware of who the "real" "owners" are.  This complexity is exacerbated when the "owner" or "owners"

begin to split up and transfer the mortgage and note willy-nilly, often effectuating the transfer by simply endorsing the note in blank, affixing an allonge to it, and assuming that the mortgage security and right to foreclose will pass with the note by operation of law. As recently as June 22, 2012, the Alabama Court of Civil Appeals decided *Coleman v. BAC Servicing, Agent for the Secretary of Veterans Affairs, an officer of the United States of America*, ____ F.3d ____, 2012 W.L. 2362617 (Ala. Civ. App. 2012), not yet released for publication. This court does not fully understand the impact of *Coleman*, but is bound by it to the extent it may apply to this case. Any defect in MorEquity's title by virtue of its possible lack of physical possession of the note at the time of foreclosure, was cured by the *res judicata* bar that the court has already found as to MorEquity. After withdrawing its first opinion that, if available, might help to understand the Court's second opinion, two of the five judges of the Court of Civil Appeals concurred only in the result. To the extent this court understands the Court of Appeals, it held that in Alabama the assignee and actual possessor of a note secured by a mortgage automatically becomes the mortgagee, even if there is no recorded assignment of the mortgage, and therefore has the right to foreclose in the event of default. Whatever interesting question *Coleman* might present elsewhere, the ownership of this note and mortgage has been established by *res judicata*.

MorEquity was its own "servicer" of the mortgage until January 2011, at which time it mailed a "Notice of Assignment, Sale, or Transfer of Servicing Rights" to the Dukes.  This letter stated that "effective February 1, 2011 the servicing of [the Dukes'] loan, that is the right to collect payments from you, will be assigned, sold, or transferred from MorEquity, Inc. to Nationstar Mortgage LLC."   The letter neither mentioned MorEquity nor explained MorEquity's continued role as owner with a right to foreclose.  It did not inform Mrs. Duke of the entity to whom her checks or money orders were to be made payable.  This also becomes academic, because at the time she received this letter, Mrs. Duke was already delinquent.  On June 30, 2011, the Dukes received a letter from MorEquity indicating that because of their default it had instructed its law firm to foreclose.  It made no mention of Nationstar or any role Nationstar would play in the proceedings. After the requisite notices required by the original mortgage had been published by MorEquity, the Dukes' property was sold for the loan balance to MorEquity at a foreclosure sale conducted on July 25, 2011.

On August 1, 2011, MorEquity filed an ejectment action against the Dukes in the Circuit Court of Shelby County, Alabama, demanding possession.  On October 27, 2011, MorEquity filed a motion for summary judgment.  After a hearing and briefing, in which the Dukes participated pro se, the state court granted MorEquity's motion for

summary judgment and awarded possession of the premises to MorEquity on December 8, 2011.  On January 6, 2012, after retaining counsel, the Dukes filed a motion to alter, amend, or vacate the summary judgment.  The Dukes' motion raised several issues, pertaining both to MorEquity and to Nationstar, but Nationstar was never named as a party in the Shelby County case.  On February 13, 2012, the Shelby County court entered an order holding that its judgment was to remain in full force and effect, that the matter was "settled", and that the Dukes' motion to vacate was "withdrawn."  What the purported "settlement" consisted of is nowhere reflected.  As a matter of Alabama law and procedure, the motion to vacate never existed insofar as it, if not withdrawn, may have sought relief of any kind from Nationstar.  The MorEquity judgment against the Dukes was final.  The Dukes did not appeal from the state court's final judgment, and the Dukes, as ordered, have vacated the premises.

On January 17, 2012, the Dukes filed the present action against both MorEquity and Nationstar.  In their complaint, the Dukes initially claimed a violation of the Fair Debt Collection Practices Act by Nationstar and state law claims of breach of contract; negligent hiring, training, and supervision; negligence; wantonness; wrongful foreclosure; outrage; and invasion of privacy against both parties.  MorEquity and Nationstar, represented by the same law firm, filed a joint motion to dismiss on the grounds that

the Dukes' claims are barred by the *Rooker-Feldman* doctrine and the doctrine of *res judicata* (Doc. 8).  After briefing and a hearing, this court entered an order dismissing with prejudice the Dukes' action as against MorEquity on the basis of *res judicata*.  (Doc. 16).  Nationstar's motion to dismiss was denied.  The court indicated that further evidence would be needed to support Nationstar's argument for a dismissal on the ground of *res judicata* arising out of alleged privity between Nationstar and MorEquity.

Nationstar has now offered two key pieces of evidence in support of its current motion for summary judgment, the Loll Declaration and the Subservicing Agreement ("Servicing Agreement"). The Loll Declaration, to which the Servicing Agreement is an exhibit, generally outlines the owner/servicer relationship between MorEquity and others as Co-owners and Servicers, and Nationstar as Sub-Servicer.  It covers the Dukes' mortgage loan and loans owned by others.  The Servicing Agreement reflects that MorEquity was one of the "Owners" and "Servicers" of the Dukes' mortgage loan and that Nationstar was the "Sub-servicer."   As Sub-servicer, Nationstar was to service the Dukes' mortgage loan on behalf of the Owners and Servicers, which included MorEquity.  The Dukes contend that Nationstar has not presented evidence that MorEquity actually "owned" the loan, but the outcome in the Circuit Court of Shelby County, adverse to the Dukes, precludes this contention.  Although the Servicing Agreement lists three Owners, it is now

incontrovertible that MorEquity was the Owner of the Dukes' loan. MorEquity's status as an Owner was confirmed by the state court when it validated MorEquity's foreclose.

**DISCUSSION**

**A. Motion to Strike**

The Dukes contend that the Loll Declaration (1) is not based on personal knowledge; (2) does not show that the declarant is competent to testify; (3) fails to establish the admissibility of the documents relied upon; and (4) contains facts that are "wrong" or "misleading," and for these reasons is due to be stricken.

The requirements for affidavits and declarations offered in support of or in opposition to a motion for summary judgment are outlined in Rule 56(c)(4), Fed. R. Civ. P.  That rule provides

> Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated.

Fed. R. Civ. P. 56(c)(4).  The court will address each of these requirements as they pertain to the Dukes' challenges of the declaration.

The rule's personal knowledge requirement is clear.  To be sufficient, a declaration must be based on personal knowledge. *See id*.  An affidavit or declaration based on anything less than personal knowledge is insufficient. *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (citing *Stewart v. Booker T. Washington*

8

*Ins.*, 232 F.3d 844, 851 (11th Cir. 2000) ("upon information and belief" is insufficient); *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965) ("upon knowledge, information and belief" is insufficient); *Robbins v. Gould*, 278 F.2d 116, 118 (5th Cir. 1960) ("knowledge and belief" is insufficient)). Additionally, the affidavit or declaration must state the basis for such personal knowledge. See *Bruce Constr. Corp. v. United States*, 242 F.2d 873, 877 (5th Cir. 1957).

The Loll Declaration meets the personal knowledge requirement. It states that "[b]ased upon my review of Nationstar's records, I have knowledge of the facts set forth in this declaration . . . ." (Doc. 22-1 at ¶3). Contrary to the Dukes' contention, personal knowledge can be based on a review of relevant business files and records. *See Mid-Continent Cas. Co. v. Don Brady Constr. Co.*, — F. Supp. 2d — , No. 11-088-CG-C, 2012 WL 1598149, at *2 (S.D. Ala. May 7, 2012) (quoting *In re Trafford Distrib. Center, Inc.*, 414 B.R. 858, 862 (Bktrcy. S.D. Fla. 2009)("[A]s a matter of law, 'personal knowledge can come from the review of the contents of business files and records.'").

The Dukes erroneously rely on *Hernandez-Santiago v. Ecolab, Inc.*, 397 F.3d 30, 35 (1st Cir. 2005), for the proposition that a review of "documents is insufficient to meet the personal knowledge requirement of the Rule." (Doc. 26 at 4). This is not what the First Circuit held in *Hernandez*. To the contrary, the court in

9

*Hernandez* determined that the affidavit was insufficient because the affiant swore only that "'a review of relevant manufacturing and sales records . . . reveal[ed]' that Ecolab Manufacturing sold the Super Trump product to Hernandez's employer." *Id.* The fatal shortcoming in the *Hernandez* affidavit was not that there was simply a review of records upon which to acquire knowledge, but that the affiant himself failed to attest that he had conducted or supervised the review of the documents or that the had personal knowledge of the review. *Id.* The Loll Declaration contains neither of these flaws. It states both that Mr. Loll reviewed Nationstar's records and that he has knowledge of the facts set forth in the declaration. This is sufficient to meet Rule 56(c)(4)'s personal knowledge requirement.

Rule 56(c)(4)'s competency requirement is also met because, as vice president of Nationstar, Mr. Loll's competency may be reasonably inferred from his high level position. *See e.g., Dixit v. Kettering Med. Ctr.*, No. 91-3494, 1992 WL 19951, at *2 (6th Cir. 1992); *Barthelemy v. Air Lines Pilots Ass'n*, 879 F.2d 999, 1018 (9th Cir. 1990); *Branch Banking & Trust Co. v. Gedalia*, No. 4:10-cv-461, 2012 WL 170945, at *3 (E.D. Tex. Jan. 20, 2012) (determining that a company vice president was competent to make statements in affidavit after review of company records).

The Dukes also argue that the Loll Declaration fails to establish the admissibility of the supporting documents.

Specifically, the Dukes contend that Mr. Loll's statements, which lay the foundation for the business record hearsay exception,[2] are conclusory.  The Dukes cite *Short v. Mando American Corp.*, 805 F. Supp. 2d 1246, 1264 (M.D. Ala. 2011), for the proposition that conclusions are not allowed in declarations because the facts must be based on personal knowledge.  This is not, however, the point that the court in *Short* was making.  In *Short*, the court found that declarations are improper if they set forth conclusory **arguments** rather than statements of **fact** based on personal knowledge.  *See id.*  There are no conclusory arguments in the Loll Declaration.  In fact, several courts have explicitly held that blanket statements that the declaration is made based on "personal knowledge, observations and business records kept in the ordinary course of business" are not deemed conclusory or improper.  *See* Underwriters at *Lloyds v. FedEx Freight Sys.*, Inc., No. 8:07-cv-212-T-EAJ, 2008 WL 2901049, at *2 (M.D. Fla. July 23, 2008); *Gutierrez v. Tex. Dept. Of Human Servs.*, No. Civ. *A 3:09-CV-2771-P, 1999 WL 515829, at *4 (N.D. Tex. July 19, 1999); see e.g., Coleman v. BAC Servicing*, — So. 3d — , No. 2100453, 2012 WL 2362617, at *4-5 (Ala.

---

[2]In the Eleventh Circuit, "[t]o satisfy [the business records hearsay exception], . . . the proponent must establish that it was the business practice of the recording entity to obtain such information from persons with personal knowledge and the business practice of the proponent to maintain the records produced by the business entity."  *United States v. Langford*, 647 F.3d 1309, 1327 (11th Cir. 2011) (quoting *United States v. Bueno-Sierra*, 99 F.3d 375, 379 (11th Cir. 1966).

Civ. App. June 22, 2012).  Mr. Loll's undisputed statement that the referenced documents are kept in the course of Nationstar's regularly conducted business activity, and that it is part of the regular practice to create such documents is sufficient to establish the admissibility of the supporting documents.

The Dukes next argue that statements in the Loll Declaration are "wrong" and that Mr. Loll is "deliberately misrepresenting the facts."  This is not the stage at which the Dukes can make this argument.  Whether Mr. Loll's statements are true or not is not a question for the court to address under Rule 56.  This is plainly an issue of credibility and is not a proper ground for a motion to strike.  Statements in a declaration may be stricken as a matter of law only when it is obvious that they constitute a "sham." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).  This occurs when there is a "flat contradiction" between the declaration and prior, sworn testimony.  *Id.* On the other hand, "[i]ssues concerning the credibility of witnesses and weight of evidence[,]," as are presented here, "are questions of **fact** which require resolution by the trier of fact." *Celotex Corp.*, 805 F.2d at 954; *see also Choudhry v. Jenkins*, 559 F.2d 1085, 1090 (7th Cir. 1977) ("[E]very discrepancy in an affidavit does not justify a district court's refusal to give credence to such evidence.").  (emphasis added).

For the foregoing reasons, the Dukes' motion to strike is

12

DENIED.

**B.   *Res Judicata***

The doctrine of *res judicata*, also known as claim preclusion, prevents a party from relitigating a claim that was or could have been litigated in a prior case. *Phenix-Girad Bank v. Cobb*, 416 So. 2d 748, 749 (Ala. 1982) (citing *Owen v. Miller*, 414 So. 2d 889, 890 (Ala. 1981)).  When a federal court is asked to give *res judicata* effect to a prior state court judgment, the federal court applies the *res judicata* principles of the state from which the allegedly preclusive ruling emanates.  *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 1985) (citing *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985)). Because Nationstar relies on a prior decision of an Alabama court, the Alabama law of *res judicata* controls.  Under Alabama law, *res judicata*, as in most other jurisdictions, requires (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) that the same cause of action was or could have been presented in both actions.  *Equity Res. Mgmt., Inc. v. Vinson*, 723 So. 2d 634, 636 (Ala. 1998).  When all four of these elements are present, any claim that was or could have been adjudicated in the prior action is barred.  *Id.* (citing *Dairyland v. Ins. Co. v. Jackson*, 566 So. 2d 723, 725-26 (Ala. 1990)).

**1. A Prior Judgment on the Merits**

The first element of *res judicata* is satisfied.  In Alabama, "[a] summary judgment acts as a judgment on the merits." *Ex parte Jefferson County*, 656 So. 2d 382, 385 (Ala. 1995) (citing *Robinson v. Holley*, 549 So. 2d 1 (Ala. 1989)).  In the ejectment action, the state court rendered a judgment on the merits when it granted judgment for MorEquity and against the Dukes.  In their brief, the Dukes confuse the elements of "a prior judgment on the merits" and "the same cause of action."  It may be true that the present action against Nationstar relies on some substantially different facts and law than those contained in the ejectment action.  The substantive context of a merits judgment is irrelevant when determining whether there as been a "prior judgment on the merits." *Gonzales, LLC v. DiVincenti*, 844 So. 2d 1196, 1203 (Ala. 2002).                **2** .

**Rendered by a Court of Competent Jurisdiction**

The Circuit Court of Shelby County was indisputably a court of competent jurisdiction over the case before it.

### 3. With Substantial Identity of the Parties

That there be substantial identity of the parties, as a general rule, requires that parties to be identical. *Greene v. Jefferson County Comm'n*, 13 So. 2d 901, 912 (Ala. 2008) (citing *Stewart v. Brinley*, 902 So. 2d 1, 10 (Ala. 2004)).  However, Alabama recognizes a not unusual exception, allowing a party who is in privity with a party in the prior action to meet the requirement of "substantial identity." *Id.* (citing *Stewart*, 902 So. 2d at 10).

It is this exception that Nationstar relies upon.  "The identity criterion of *res judicata* does not require complete identity, but only that the party against whom *res judicata* is asserted was either a party or in privity with a party to the prior action." *Chapman Nursing Home, Inc. v. McDonald*, 985 So. 2d 914, 921 (Ala. 2007) (quoting *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 725-26 (Ala. 1990)).  Although "privity" has not been uniformly or perfectly defined, it regularly arises from a mutual successive relationship to the same rights of property, or for an identity of interest in the subject matter of the prior litigation.  *Baker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 821 So. 2d 158, 165 (Ala. 2001) (citing *Hughes v. Martin*, 533 So. 2d 188, 191 (Ala. 1988)).[3]  Whether privity exists in a given case is generally resolved in an ad hoc fashion based on whether the circumstances support a person being bound by or entitled to the benefits of a prior judgment.  *Id.* (citing *Hughes*, 533 So. 2d at 191).

There is no dispute that the Dukes, against whom *res judicata* is here asserted by NationStar, were parties to the prior ejectment action.  The Dukes, however, point out that Nationstar was not a party to the prior action and that it has failed to establish that it was in privity with MorEquity.  Nationstar contends that it is

---

[3]While the court in *Baker v. Merrill Lynch* discusses this concept with respect to *collateral estoppel*, the court relies on *Hughes v. Martin*, which is based on *res judicata*.  *See Hughes v. Martin*, 533 So. 2d 188, 190-91 (Ala. 1988).

in privity with MorEquity because it shares an "identity of interest in the subject matter of the litigation," or, alternatively, because it acted as MorEquity's agent in servicing the mortgage and was "represented" at the defense of the Dukes' motion to set aside the judgment entered by the state court.

Alabama courts have not addressed the relatively new questions of whether a servicer and lender (or its assignee, as in this case) are in privity for purposes of *res judicata*. A handful of district courts across the country have, however, faced this issue and found privity. These courts have concluded that there is privity between a servicer and lender because they share an identity of interests in the subject matter of the litigation. Although these cases are not binding on this court, they would be persuasive on this court if this court were not bound by a separate peculiarity in Alabama that will hereinafter be discussed and be found dispositive.

In *Stewart v. Deutsche Bank National Trust Co.*, a district court in Tennessee, applying Tennessee law, determined that the trustee, lender, and servicer of a mortgage loan were in privity because they shared an identity of interests in the subject matter of the litigation. No. 3:08-cv-475, 2010 WL 4004670, at *6 (E.D. Tenn. Oct. 12, 2010). In the prior action in that case, Deutsche Bank, the mortgage trustee, had foreclosed and filed an ejectment action against the mortgagor, and the state court had entered judgment for Deutsche Bank. *Id.* at *2. After the mortgagor's

appeal was denied, he made several claims against Deutsche Bank as well as against the lender and the servicer. *Id.* Applying the same "identity of interest in the subject matter of the litigation" standard for privity as employed in Alabama, the Tennessee court determined that the mortgage trustee, lender, and servicer were in privity because each sought "to avoid [] liability by relying on the state court's judgment regarding the lawfulness of the foreclosure and Deutsche Bank's right to possession of the Property." *Id.* at *6. The facts in the instant case are virtually identical to those in *Stewart*. The ejectment action brought in the Circuit Court of Shelby County by MorEquity, assignee of the lender, was against the Dukes, the mortgagors. The Dukes' present action began with claims against MorEquity, the owner of the note, and Nationstar, the servicer. If the reasoning of the court in *Stewart* were followed by this court, Nationstar's and MorEquity's interests were the same, and they were in privity.

The Southern District of New York likewise found that privity exists between a servicer and a lender because the lender adequately represented the servicer's interest when the servicer was servicing the loan at the time the lender initiated the allegedly preclusive action. *Yeiser v. GMAC Mortgage Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008). Under New York law, privity exists when, *inter alia*, the present party's interests were

represented by a party to a prior action.[4]  *Id.*  In *Yeiser*, the mortgagors executed a mortgage in favor of MERS as nominee for MortgageIt, and the mortgage was subsequently transferred to Option One and then to GMAC for servicing.  *Id*. at 417.  After the mortgagors defaulted, MERS filed a foreclosure action in state court, whereupon a judgment of foreclosure was entered.  *Id*. at 418.  The mortgagors then filed suit in federal court against MERS, GMAC, and Option One alleging violations of federal and state laws arising from the allegedly wrongful foreclosure proceeding.  *Id*. at 419.  The district court dismissed the action against GMAC, the servicer, based on *res judicata*.  *Id*. at 423.  In concluding that there was privity between GMAC, the servicer, and MERS, the ultimate mortgagee, the district court stated that "GMAC's interest in the mortgage loan was represented by MERS because GMAC serviced the loan at the time of the foreclosure."  *Id*.  Based on this reasoning, Nationstar would be in privity with MorEquity.

Other courts have recognized privity between a mortgage servicer and lender based on an identity of interest.  The federal district court for Nevada found privity between a lender and servicer when they showed an interest in allowing foreclosure to proceed.  *Huggins v. Bank Deutsche Nat'l* TR CO TRS, No.

---

[4]Although worded differently, the Alabama standard, "an identity of interest in the subject matter of the litigation," and the New York standard, "the party's interests are represented by a party to a prior action," are similar.

2:11-cv-147-KJD-LRL, 2011 WL 2976818, at *3-4 (D. Nev. July 21, 2011) (applying the privity standard "a person [is] so identified in interest with another that he represents the same legal right"). Also, a district court in Mississippi found privity between the holder and servicer of a mortgage loan. *Anderson v. Bank of Am.*, No. 2:09-cv-183-DCB-JMR, 2009 WL 3647516, at *4 (S.D. Miss. Nov. 3, 2009) (applying the privity standard "the non-party's interest were adequately represented by a party to the original suit").

The Dukes have provided the court with no Alabama cases and no foreign cases to contradict the above decisions that this court would find persuasive if they had not been superceded and rendered irrelevant by the Alabama Supreme Court.  The Dukes have given several reasons based on Nationstar's obligations under the Servicing Agreement as to why MorEquity's and Nationstar's interests are not aligned.  These arguments miss the mark. Nationstar's specific obligations under the Servicing Agreement are immaterial in a determination of whether MorEquity and Nationstar had an identity of interest in the subject matter of the Shelby County litigation sufficient to support privity.  The proper inquiry, as outlined by the several courts who have addressed this issue, is whether both parties seek to avoid liability by relying on the state court judgment regarding the lawfulness of foreclosure and the foreclosing party's right to possession of the property. *See Stewart*, 2010 WL 4004670 at *6; *see also Yeiser*, 535 F. Supp.

2d at 423 (lender and servicer's interests were aligned for the purpose of establishing privity when the servicer serviced the loan at the time of foreclosure).

Here the Loll Declaration and the Servicing Agreement together demonstrate that Nationstar acted on MorEquity's behalf in servicing the Dukes' mortgage loan. Based on this relationship, MorEquity and Nationstar had a sufficient identity of interest in the subject matter of the litigation to have permitted Nationstar to invoke *res judicata* as MorEquity's privy, **except for the fact that Alabama has a peculiarity not discussed in any of the above-discussed cases or by the Dukes, although casually mentioned by Nationstar.**

Because MorEquity and Nationstar's identity of interest in the subject matter of the litigation is sufficient to conclude that they would be in privity under the normal rules for *res judicata*, it is unnecessary to address Nationstar's privity argument based on agency. The court will assume *arguendo* that Nationstar and MorEquity had an agency relationship that, under other circumstances, would meet the standards to establish privity, but for Alabama's unique rule hereinafter discussed.

### 4. Same Cause of Action in Both Actions. The Alabama Rule

The final routinely recognized requirement for invoking *res judicata* is that the same cause of action must have been presented,

or could have been presented, in both actions.  *See Equity Res. Mgmt., Inc.*, 723 So. 2d at 636.  Nationstar contends that this requirement is satisfied because the Dukes' current claims were compulsory counterclaims in the state court ejectment action.  Rule 13(a), Ala. R. Civ. P., governing compulsory counterclaims, states in pertinent part as follows:

> (a) Compulsory Counterclaims.  A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

> * * *

> In the event an otherwise compulsory counterclaim is not asserted . . . relitigation of the claim may be barred by the doctrines of *res judicata* or collateral estoppel by judgment in the event certain issues are determined adversely to the party electing not to assert the claim.

Ala. R. Civ. P. 13(a).  Although the causes of action in the state and federal cases may have arisen out of the same transaction or occurrence and thus be related, the Dukes' claims against Nationstar were not compulsory counterclaims in the state court ejectment action because Nationstar **was not an "opposing party."** *Little Narrows, LLC v. Scott*, 1 So. 3d 973, 978-79 (Ala. 2008).  In *Little Narrows*, the Alabama Supreme Court directly addressed the scope of the term "opposing party" in Rule 13(a), Ala. R. Civ. P. It limited the definition to those parties **formally named as parties in the prior action**. *Id.* at 977-79.  Little Narrows argued

21

that its claims could not be considered compulsory counterclaims because the Scotts (the opposing party in the second action) were not "opposing part[ies] in the prior action." *Id.* at 977.   In response, the Scotts argued, as does Nationstar in this case, that they were "substantially identical" to the parties in the prior action because the party to the prior action was their agent. *Id.* Additionally, the Scotts argued that the doctrine of *res judicata*, upon which the counterclaim rule is based, only requires substantial identity of the parties. *Id.*

The Alabama Supreme Court rejected both arguments, and explicitly departed from the interpretation of "opposing party" in the federal version of Rule 13(a).   As Nationstar points out, federal precedent broadly interprets the term "opposing party" in the federal version of Rule 13(a). *See Transam. Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 391-93 (3d Cir. 2002) (concluding that "opposing party" in Fed. R. Civ. P. 13(a) should not be read strictly to encompass only named parties, but should include those in privity).   Because the Scotts were not parties to the prior action, the Alabama Supreme Court held that any factual claims that Little Narrows had against them were not compulsory counterclaims because they were not an "opposing party" under Rule 13(a), Ala. R. Civ. P.   Because **Nationstar was not a party to the state court ejectment action**, the Dukes' claims against it cannot be construed as compulsory counterclaims under

Rule 13(a), Ala. R. Civ. P., which is controlling authority.

Nationstar argues that this court has already recognized that this action involves at least some of the same claims as the state court ejectment action.  This may be true, but the court's previous dismissal of the action as to MorEquity, while ending the controversy as between the Dukes and MorEquity, expressly reserved Nationstar's *res judicata* defense.  MorEquity was the only named plaintiff in the prior state court ejectment action.  The fact that the Dukes may have been able to add Nationstar as a counter-defendant does not change the rule.  There is no basis for a finding that the Dukes' claims against Nationstar are the "same claim" for purposes of *res judicata* in Alabama.  Because an essential requirement for *res judicata* under Alabama law is not met, Nationstar's motion for summary judgment is DENIED.

**\* \* \***

The court anticipates the possibility of the filing of another motion for summary judgment by Nationstar after discovery is complete.

DONE this 30th day of August, 2012.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

23